1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER LULL,                      No.  2:19-cv-02444 KJM AC PS

12              Plaintiff,

13        v.                                FINDINGS AND RECOMMENDATIONS

14   COUNTY OF PLACER, et al.,

15              Defendants.

16

17        Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly

18   referred to the undersigned pursuant to Local Rule 302(c)(21).  All defendants except Ryan

19   Zender, who has not appeared, move for dismissal.  ECF No. 11; see also ECF No. 14.  Plaintiff

20   has opposed the motion.  ECF No. 12.  For the reasons that follow, the undersigned recommends

21   that the motion to dismiss be granted, and that plaintiff be permitted to amend some but not all

22   claims.

23                            **I.  BACKGROUND**

24        A.  Allegations of the Complaint

25        Plaintiff Christopher Lull owned a home on approximately six acres of land ("the

26   Property") in Placer County, some of which he leased to third parties for agriculture.  ECF No. 1

27   at 3-4.  He brings suit against Placer County and numerous county officials regarding 2017

28   nuisance abatement proceedings and related matters.  The individual named defendants are Placer

                                          1

County Board of Supervisors members Duran, Holmes, Montgomery, Uhler, and Weygandt (collectively, "Supervisors"); Placer County employees Frank, Profant, Solomon, Wegner, and Zender; and Placer County Sheriff's Officers Harris and Blair. Id. at 2, 8-9. The complaint alleges that these individuals were all "authorized by Defendant County to enforce zoning and building regulations in the County of Placer." Id. at 2.

In 2010, Lull criticized Wegner's job performance, a criticism he repeated in November 2016 when he sent an e-mail also criticizing Placer County and the supervisors. ECF No. 1 at 4. On October 19, 2017, Solomon and another individual requested permission from Lull to inspect the Property, which Lull refused. ECF No. 1 at 5. The next day, Solomon posted a notice on the Property threatening sanctions. Id. Lull filed a federal lawsuit concerning the events of the 19th and 20th ("Lull I") and served that complaint on Solomon and Wegner, which led Wegner to become visibly angry. Id. On October 27, Solomon searched the Property pursuant to a warrant and posted a notice of abatement hearing on the Property. Id. at 6.

On November 8, 2017, Profant presented the County's case for the requested abatement order and administrative fine before hearing officer Frank. ECF No. 1 at 6-7. Solomon provided testimony. Id. at 6. Frank issued an order of abatement of the nuisance and a $32,000 fine. Id. At the hearing, Lull saw Wegner speak to several unnamed Sheriff's officers and gesture to Lull. Id. In February 2018, Profant, Solomon, Wegner, and Zender engaged a private collection company to collect the $32,000 fine. ECF No. 1 at 10. In March 2018, after Lull attended a Placer County public meeting, two unnamed Placer County Sheriff's officers warned Lull against driving his car, as they said Lull did not have a valid driver's license. ECF No. 1 at 7. Lull drove away without issue. Id.

On June 8, 2018, Placer County notified Lull of an agenda item before the Board of Supervisors regarding the costs of abatement, and proposal to recover those costs through a special assessment against the Property. ECF No. 1 at 8. Lull attended the public Board of Supervisors meeting on July 10. Id. Zender presented the County's estimate of abatement costs to the Board of Supervisors. Id. Lull presented his defense; he states that he spoke for three minutes and was interrupted for his remaining seven minutes, and that Zender's assessment was

false.  Id.  The supervisors imposed the special assessment.  Id.

At some point that day, Lull was approached in the parking lot by Harris, who wanted Lull to sign a citation for driving on a suspended license.  ECF No. 1 at 9.  Lull asked if he was being detained, and Harris said "yes, you are detained."  Id.  Though Lull tried to show Harris his driver's license, Harris would not look at it and stated it was suspended due to a "known DUI."  Id.  After Lull signed the citation, he was released.  Id.  Harris's immediate supervisor Blair witnessed the interaction and condoned Harris's action.  Id.  Lull alleges that other Placer County Sheriff's officers were present and knew his name.  Id. at 9-10.  Lull alleges that Solomon, Wegner, and Zender ordered the deputies to investigate, harass, vex, and surveil Lull.  Id. at 10.

The complaint sets forth the following claims for relief under 42 U.S.C. § 1983: (1) violation of plaintiff's right to procedural due process, against Duran, Frank, Holmes, Montgomery, Profant, Solomon, Uhler, Weygandt, and Zender;[1] (2) violation of plaintiff's right to substantive due process, against Duran, Frank, Holmes, Montgomery, Profant, Solomon, Uhler, Weygandt, and Zender; (3) unreasonable seizure in violation of the Fourth Amendment, against Harris and Blair; (4) denial of equal protection, against Duran, Frank, Holmes, Montgomery, Profant, Solomon, Uhler, Wegner, Weygandt, and Zender; (5) violation of plaintiff's First Amendment right to free speech, against all defendants; and (6) violation of California's Bane Civil Rights Act by Harris's use of "threats, intimidation, coercion and actual violence" against plaintiff.

B.  Procedural History

1.  Lull I

The case now before the court is the second that plaintiff has filed regarding his dispute with Placer County over the subject abatement proceedings.  The original complaint in Lull I, Case No. 2:17-cv-2216 KJM EFB, was filed on October 23, 2017 against defendants Placer County, Pedretti, Solomon, Wegner, Zanarini, and Does 1-100.  ECF No. 11-2 at 5.  The

---

[1] Plaintiff subdivides Claim One into two distinct subclaims: one regarding the November 2017 abatement hearing and imposition of the $32,000 fine, and another regarding the assessment of costs at the July 2018 Board of Supervisors meeting.  Id. at 11-12.

complaint sought injunctive relief from the enforcement proceedings that were pending when the action was filed, on grounds that plaintiff's due process rights were being violated. Id. at 7-12. The court granted defendants' motion to dismiss for lack of standing. Id. at 22-23.

On October 26, 2018, after the abatement proceedings had resulted in the imposition of a fine and the assessment of costs, Lull filed a First Amended Complaint ("FAC") which named the same defendants as the original complaint. ECF No. 11-2 at 25. The FAC sought specific relief against defendants' enforcement of the Placer County cannabis ordinance, including the fines for $32,000 and approximately $7,000, and sought to overturn the ordinance itself. Id. at 30-33.

While defendants' motion to dismiss the FAC was under submission, Lull filed a request for leave to amend the FAC, together with a proposed Second Amended Complaint ("SAC") which is similar to the complaint at bar. ECF No. 11-2 at 35, 41-58. The court granted the motion to dismiss the FAC for failure to state a claim, denied Lull's request to file the SAC, and denied leave to amend. Id. at 75-76.

2. Lull II

On December 6, 2019, plaintiff filed the instant complaint. ECF No. 1 at 1. All named defendants except Ryan Zender have appeared. It does not appear that Zender has been served.

C. Motion to Dismiss

All served defendants now move to dismiss. ECF No. 11 at 1-2. Defendants argue that plaintiff's first, second, fourth, and fifth claims are barred by res judicata; that the first, second, fourth, and fifth claims against Frank, Profant, Solomon, and Wegner are barred by the statute of limitations; that all of plaintiff's claims fail to allege facts sufficient to state a claim for relief; and that defendants are entitled to absolute immunity. Id. at 2, 9-10.

**II. ANALYSIS**

A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983) (citation omitted). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901

4

F.2d 696, 699 (9th Cir. 1990) (citation omitted).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), as amended, 275 F.3d 1187 (9th Cir. 2001).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). "Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citation and internal quotation marks omitted). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner,

1  976 F.2d 469, 471 (9th Cir. 1992).  A pro se litigant is entitled to notice of the deficiencies in the

2  complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by

3  amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other

4  grounds by statute as stated in Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc).

5       B.  Request for Judicial Notice

6       As a general rule, "a district court may not consider any material beyond the pleadings in

7  ruling on a Rule 12(b)(6) motion."  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001)

8  (citation omitted).  There are two exceptions to this rule.  Id.  First, a district court may consider

9  "material which is properly submitted as part of the complaint."  Id. (citation omitted).  Second, a

10  court may take judicial notice of "matters of public record" under Federal Rule of Evidence

11  ("Rule") 201.  Id. at 688-89 (citation omitted).  Under Rule 201, a court may not take judicial

12  notice of a fact that is "subject to reasonable dispute."  Fed. R. Evid. 201(b).  If the contents of a

13  matter of public record are in dispute, the court may take notice of the fact of the document at

14  issue but not of the disputed information contained within.  See Lee, 250 F.3d at 689-90.

15       Pursuant to Rule 201, the court takes judicial notice of all exhibits submitted in

16  defendants' request for judicial notice to the extent that they relate to defendants' res judicata

17  defense.  ECF No. 11-2 at 2.  The court does not take judicial notice of information contained

18  therein that is subject to reasonable dispute.  These exhibits are from the court's own records,

19  Case No. 2:17-cv-02216 KJM EFB, and include:

20       A.  ECF No. 2: Summons and Complaint

21       B.  ECF No. 17: Finding and Recommendations

22       C.  ECF No. 18: Order

23       D.  ECF No. 19: First Amended Complaint

24       E.  ECF No. 35: Motion to Request Leave to Amend First Amended
25       Complaint

26       F.  ECF No. 36: Second Amended Complaint

27       G.  ECF No. 41: Order and Findings and Recommendations

28       H.  ECF No. 42: Order

I. ECF No. 43: Judgment in a Civil Case

Id.

C.  Absolute Immunity

Defendants assert various absolute immunities—legislative, prosecutorial, and quasi-judicial—with only cursory supporting argument.  ECF No. 11-1 at 9-10.  The court finds the claims of immunity to be inadequately supported and therefore unavailing.

First, although local legislators are absolutely immune from liability under § 1983 for their legislative acts, Kaahumanu v. Cty. of Maui, 315 F.3d 1215, 1219 (9th Cir. 2003), defendants offer no argument why the Supervisors' actions in this case constitute legislative acts entitled to that protection.  "Whether an act is legislative turns on the nature of the act," not "on the motive or intent of the official performing it."  Bogan v. Scott-Harris, 523 U.S. 44, 45 (1998).  Four factors guide this analysis: (1) "whether the act involves ad hoc decisionmaking, or the formulation of policy"; (2) "whether the act applies to a few individuals, or to the public at large"; (3) "whether the act is formally legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation."  Kaahumanu, 315 F.3d at 1220 (citations omitted).

Here, Duran, Holmes, Montgomery, Uhler, and Weygandt — all members of the Placer County Board of Supervisors, ECF No. 1 at 8, ECF No. 11-1 at 3 — imposed a special assessment or fine on plaintiff's property.  ECF No. 1 at 8.  This decision was ad hoc, as it was "taken based on the circumstances of the particular case and did not effectuate policy or create a binding rule of conduct."  Kaahumanu, 315 F.3d at 1220.  The decision applied to plaintiff only, not to the public at large.  The complaint does not state how the Supervisors made the decision to impose the fine; even if there was a vote, that would be insufficient to render the action legislative.  See Kaahumanu, 315 F.3d at 1223.  In Kaahumanu, the denial of a conditional use permit was found not to bear the hallmarks of traditional legislation.  315 F.3d at 1223.  The imposition of a special assessment on a single property is an analogous type of administrative decision.  Because it appears that the Supervisors' decision was administrative in nature, legislative immunity does not apply.

////

Defendants also assert in conclusory fashion that Frank, as the hearing officer, is entitled to quasi-judicial immunity; that Profant, as the government civil attorney who presented the matter at hearing, is entitled to prosecutorial immunity; and that Wegner and Solomon, as officials who gathered and presented evidence at the hearing, are entitled to immunity as witnesses. ECF No. 11-1 at 10. The complaint does not include facts to support the findings that are necessary to a determination whether these immunities apply. See Demoran v. Witt, 781 F.2d 155, 157 (9th Cir. 1985) (listing nonexclusive factors relevant to determining whether absolute or qualified immunity applies to officers whose "functions bear a close association to the judicial process"). Nor do defendants present any argument in support of their conclusory claims of immunity. Accordingly, the court rejects defendants' assertions of absolute immunity.

D. Res Judicata

Defendants argue that plaintiff's first (procedural due process), second (substantive due process), fourth (equal protection), and fifth (retaliation/free speech) claims are barred against all defendants by the doctrine of res judicata. ECF No. 11 at 2. For the reasons that follow, the court concludes that only the County, and any defendants putatively sued in their official capacities, are entitled to the protection of res judicata.

1. Governing Legal Principles

In general,

> [u]nder the doctrine of res judicata [or claim preclusion], a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel [or issue preclusion], on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). Defendants here assert res judicata, or claim preclusion, only. See ECF No. 11-1 at 6.

The doctrine of claim preclusion, which applies to § 1983 actions,[2] "bars repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final

_____

[2] See Clark v. Yosemite Cmty. Coll. Dist., 785 F.2d 781, 786 (9th Cir. 1986).

judgment on the merits." <u>United States v. Tohono O'Odham Nation</u>, 563 U.S. 307, 315 (2011) (citation and internal quotation marks omitted).  That is, when the earlier suit (1) involved identical parties or privies, (2) involved the same "claim" or cause of action as the later suit, and (3) reached a final judgment on the merits, the later claim is barred.  <u>Mpoyo v. Litton Electro-Optical Sys.</u>, 430 F.3d 985, 987 (9th Cir. 2005) (citation omitted).  The party asserting res judicata has the burden to demonstrate that its requirements are met.  <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404 (9th Cir. 1985).

## 2.  <u>Claims Against Placer County</u>

### a.  *Privity*

Because the County was a defendant in <u>Lull I</u>, it is "therefore quite obviously in privity." <u>Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency</u>, 322 F.3d 1064, 1081 (9th Cir. 2003).  The first element is thus satisfied as to the County.

### b.  *Identity of Claims*

To determine whether the two suits involved the same claims, the court considers "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."  <u>Headwaters Inc. v. U.S. Forest Serv.</u>, 399 F.3d 1047, 1052 (9th Cir. 2005) (quoting <u>Costantini v. Trans World Airlines</u>, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).  The fourth factor is the most important.  <u>Fund for Animals v. Lujan</u>, 962 F.2d 1391, 1398 (9th Cir. 1992).  "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."  <u>Western Sys., Inc. v. Ulloa</u>, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement (Second) Judgments § 24(2) (1982)).  Res judicata bars not only causes of action that were expressly asserted in the prior lawsuit, but those that could have been brought. <u>See</u> <u>Adams v. California Dep't of Health Services</u>, 487 F.3d 684, 693 (9th Cir. 2007) (a plaintiff is required to bring all claims against a party or privies that relate to the same transaction or event at one time).

Here, both lawsuits involve the same nuisance abatement proceedings; both challenge the County's enforcement of its cannabis cultivation ordinance against plaintiff and the monetary penalties that were imposed. Accordingly, the two lawsuits arise out of a common nucleus of facts. Although plaintiff asserts different and additional violations of his rights in Lull II, those violations involve the same underlying nucleus of facts as to the County. Plaintiff's reformulation of his theories for relief is not dispositive. See Mpoyo, 430 F.3d at 987-88. Any claims that would lie against the County in this case[3] could have been asserted in Lull I. Accordingly, the second res judicata element is satisfied.

### c. *Final Judgment*

"'[F]inal judgment on the merits' is synonymous with 'dismissal with prejudice.'" Hells Canyon Pres. Council v. United States Forest Serv., 403 F.3d 683, 686 (9th Cir. 2005). Here, the court dismissed Lull I "without leave to amend for failure to state a claim." ECF No. 11-2 at 76. Federal Rule of Civil Procedure 41(b) states that "[u]nless the dismissal order states otherwise, [an involuntary] dismissal . . . — except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 — operates as an adjudication on the merits." Id.; see Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002). The judgment in Lull I thus constitutes a final judgment. Accordingly, this lawsuit is barred by res judicata as to defendant Placer County.

### 3. Claims Against Individual Defendants

### 1. *Privity of Parties*

"Whether a person was a party to the prior suit must be determined as a matter of substance and not of mere form." American Triticale, Inc. v. Nytco Services, Inc., 664 F.2d 1136, 1147 (9th Cir. 1981). The most important consideration is "whether or not in the earlier litigation the representative of the [party] had authority to represent its interests in a final

---

[3] The court notes that the County cannot be liable under § 1983 for the actions of its employees. Monell v. Dep't. of Soc. Servs. of New York City, 436 U.S. 658, 694-95 (1978). The discrete claims of the instant complaint are based on the actions of the individual defendants. ECF No. 1 at 10-18. However, the complaint also alleges that the underlying County ordinance was approved by the defendant County with knowledge of its illegality. Id. at 5, ¶¶ 17-18. In any case, to the extent that this dispute supports municipal liability on any theory, such claims could have been brought in Lull I and are therefore barred by res judicata.

adjudication of the issue in controversy." <u>Sunshine Anthracite Coal Co. v. Adkins</u>, 310 U.S. 381, 403 (1940); <u>see also</u>, <u>Fund for Animals</u>, 962 F.2d at 1398. In sum, privity is a legal conclusion designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved. <u>In re Schimmels</u>, 127 F.3d 875, 881 (9th Cir. 1997).

### a. Defendants Solomon and Wegner

Defendants Solomon and Wegner were both named in <u>Lull I</u>. However, "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." Restatement (Second) of Judgments, § 36 (1982). Although the <u>Lull I</u> FAC and the instant complaint both purport to sue the defendants in their official and individual capacities, <u>Lull I</u> sought only declaratory and injunctive relief. <u>See</u> ECF No. 11-2 at 33. Injunctive relief is properly sought from public officials in their official capacity because it is the office, and not the particular person holding the office, that has the power to provide relief. <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 27 (1991); <u>Chaloux v. Killeen</u>, 886 F.2d 247, 251 (9th Cir. 1989). Accordingly, <u>Lull I</u> must be construed as bringing claims against Solomon and Wegner in their official capacities only.[4]

The instant complaint seeks only damages. ECF No. 1 at 19. Damages are available in § 1983 lawsuits for injuries caused by defendants through their own personal actions. <u>See</u> <u>Jones v. Williams</u>, 297 F.3d 930, 934 (9th Cir. 2002) (individual liability depends on personal participation in the alleged deprivation of rights). The claims in <u>Lull II</u> are based on each named defendant's alleged personal participation in the violation of plaintiff's rights. Accordingly, this case seeks relief from defendants in their individual capacities. To the extent this is the case, res judicata does not bar the claims.

---

[4] The undersigned need not consider whether the proposed SAC that plaintiff filed in <u>Lull I</u> contained individual capacity claims. Leave to amend was denied, and so no putative individual capacity defendants were ever made party to that suit. As explained more fully below regarding the other individual defendants, putative defendants who were never served in the prior litigation cannot invoke the res judicata bar. And because each defendant's official capacity and individual capacity interests are distinct, they are not in privity with themselves in different capacities.

A government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata. Andrews v. Daw, 201 F.3d 521, 525-526 (4th Cir. 2000); see also Headley v. Bacon, 828 F.2d 1272, 1279-1280 (8th Cir. 1987); Roy v. City of Augusta, 712 F.2d 1517, 1521-1522 (1st Cir. 1983); Unimex, Inc. v. United States Dep't of Hous. & Urban Dev., 594 F.2d 1060, 1061 n. 3 (5th Cir.1979) (per curiam); Gray v. Lacke, 885 F.2d 399, 405-406 (7th Cir. 1987); Mitchell v. Chapman, 343 F.3d 811, 823 (6th Cir. 2003). Accordingly, a previous judgment involving defendants in their official capacity does not bar a subsequent lawsuit against the same defendants in their individual capacity. See Diamond v. City of Los Angeles, 2016 U.S. Dist. LEXIS 73458 at *18-19 (C.D. Cal. 2016); Escamilla v. Giurbino, 2008 U.S. Dist. LEXIS 125109 at 18-20 (S.D. Cal. 2018); Hunley v. Breceda, 2010 U.S. Dist. LEXIS 13627 at *19-21 (C.D. Cal. 2010). For this reason, res judicata does not bar plaintiff's present individual capacity claims against Solomon and Wegner.[5]

> b. *Defendants Frank, Duran, Weygandt, Uhler, Montgomery, Holmes, and Profant*

Defendants argue that all claims against Frank, Profant and the Supervisors are barred by res judicata even though they were not named as defendants in Lull I. The argument fails.

Generally, a person who is not a party to an action is not entitled to the benefit of res judicata. Nordhorn v. Ladish Co., 9 F.3d 1402, 1405 (9th Cir. 1993) (citing Restatement (Second) of Judgments §§ 34(3), 39, 43–61 (1982)). Defendants emphasize that they were among the Doe defendants in Lull I, as demonstrated by plaintiff's failed attempt to substitute them for Does in his proposed Second Amended Complaint. See ECF No. 11-1 at 6-7. However, plaintiff was denied leave to amend, and therefore Profant, Frank and the Supervisors were never actually made parties to the action. See Nagle v. Lee, 807 F.2d 435, 440 (5th Cir. 1987) ("[T]he mere naming of a person through use of a fictitious name does not make that person a party absent voluntary appearance or proper service of process."). No person who has not been made a party

---

[5] To the extent if any that plaintiff seeks to maintain claims against these defendants in their official capacities, that is the equivalent of suing the County itself, see Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991), and is barred by the res judicata effect of Lull I.

by service of process is bound by a judgment in the litigation. <u>Mason v. Genisco Technology Corp.</u>, 960 F.2d 849, 851 (9th Cir. 1992).

Even if Frank, Profant and the Supervisors could be considered in privity with the County in <u>Lull I</u>, on grounds that the County effectively represented their interests in the prior litigation, that would be true only to the extent that the County officials are sued in the their official capacity. As the undersigned has already explained at to Solomon and Wegner, <u>Lull I</u> should be construed as an exclusively official capacity lawsuit seeking injunctive relief, while the instant case presents claims for damages against all defendants in their individual capacities. Accordingly, res judicata does not bar the instant claims. <u>See</u> <u>Andrews</u>, 201 F.3d at 525-526.

### 4. Conclusion as to Res Judicata

For the reasons explained above, res judicata bars plaintiff's claims against Placer County. Because any official capacity claims against the individual defendants are tantamount to claims against the County, <u>Gomez v. Vernon</u>, 255 F.3d 1118, 1126 (9th Cir. 2001), those are also barred. However, plaintiff's claims against the individual defendants in their individual capacities are not res judicata. Accordingly, the undersigned proceeds to consider the timeliness of those claims.

### E. Statute of Limitations

Defendants contend that Claims One, Two, Four and Five are barred by the applicable statute of limitations. Actions brought under § 1983 are governed by the forum state's statute of limitations for personal injury actions. <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004). In California, a two-year statute of limitations applies. <u>See</u> Cal. Civ. Proc. Code § 335.1; <u>Jones</u>, 393 F.3d at 927. The limitations period runs from accrual of the claim(s), which occurs when the plaintiff has a complete and present cause of action. <u>Flynt v. Shimazu</u>, 940 F.3d 457, 462 (9th Cir. 2019). The complaint now before the court was filed on December 6, 2019. ECF No. 1 at 1. To be timely, each cause of action must have accrued between December 6, 2017 and December 6, 2019. <u>See, e.g.</u>, <u>Aguilera v. Heiman</u>, 95 Cal. Rptr. 3d 18, 23-24 (Cal. Ct. App. 2009).

### 1. Claim One: Procedural Due Process

Subclaim One is based on the November 2017 abatement hearing and the penalty that was imposed. ECF No. 1 at 11, ¶ 59. Because the abatement hearing took place more than two years

before this suit was filed,[6] all claims arising from the abatement hearing (or events leading up the hearing) are time-barred.  Accordingly, Subclaim One must be dismissed.

Subclaim Two is based on the July 2018 Board of Supervisors meeting at which plaintiff was assessed costs related to the prior abatement proceedings.  ECF No. 1 at 11, ¶ 60.  This hearing took place within the limitations period, and any claims arising from it are therefore timely.

### 2.  Claim Two: Substantive Due Process

This claim is based on both the penalty imposed by Frank at (or in relation to) the abatement hearing, ECF No. 1 at 13, ¶ 68, and the subsequent assessment of costs by the Supervisors, id. at ¶ 69.  All claims arising from the 2017 abatement hearing, or events leading up to the hearing, are time-barred on the face of the complaint.  That portion of Claim Two which is based independently on the 2018 assessment of costs is timely, however.

### 3.  Claim Four: Equal Protection

Claim Four also targets both the fine or penalty imposed at the abatement hearing and the subsequent imposition of assessed costs.  As with the two claims already discussed, plaintiff is too late to seek relief for violations of his rights at and in relation to the November 8, 2017 hearing.  However, his challenge to the events of July 10, 2018, is timely.

### 4.  Claim Five: Retaliation

This claim encompasses all of the events described in the complaint, and alleges broadly that all actions taken by all defendants were motivated by hostility toward plaintiff on account of his exercise of his First Amendment right to criticize County government.  ECF No. 1 at 18.  This claim will be discussed more fully below, regarding defendant's argument that the allegations fail to state a claim for relief.  For purposes of the timeliness analysis, however, the undersigned will

---

[6]  The complaint indicates that the hearing took place on November 8, 2017, ECF No. 1 at 6, ¶ 28, and does not provide any other dates on which official actions were taken regarding the order of abatement and fine imposed as a result of the hearing.  Accordingly, the face of the complaint supports an accrual date of November 8, 2017 for all claims directly related to the abatement hearing and fine.  As the court discusses below regarding leave to amend, plaintiff has suggested that additional facts may entitle him to a later accrual date.

assume without deciding that that the allegations of the complaint—construed with great liberality—might establish an ongoing course of retaliatory conduct that began outside the limitations period and continued into it. Under such a continuing violation theory, the entirety of Claim Five could be timely.[7] To be clear: the court does not find that plaintiff has adequately alleged a continuing violation that would render the entirety of this claim timely, or that he could do so on the basis of the facts thus far alleged. It is unclear whether plaintiff can avoid limitation of this claim to events that happened after December 6, 2017. However, defendants' statute of limitations argument is extremely cursory and does not specifically discuss Claim Five at all. For the reasons set forth below, the undersigned finds that this claim should be dismissed for failure to state a claim, with leave to amend. Accordingly, for present purposes, the undersigned will not recommend dismissal on statute of limitations grounds.

### 5. Conclusion as to Statute of Limitations

For the reasons explained above, the following claims and portions of claims are time-barred:

- Claim One, Subclaim One;

////

---

[7] "The continuing violations theory applies to § 1983 actions . . . allowing a plaintiff to seek relief for events outside of the limitations period." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). The doctrine has the "effect of . . . restart[ing] the statute of limitations" when there are "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 597 (9th Cir. 1990); Airweld, Inc. v. Airco, Inc., 742 F.2d 1184, 1189-90 (9th Cir. 1984). However, the Ninth Circuit has "repeatedly held that a mere continuing impact from past violations is not actionable." Knox, 260 F.3d at 1013 (quotations and citations omitted); Abramson v. Univ. of Haw., 594 F.2d 202, 209 (9th Cir.1979) ("The proper focus is upon the time of the ... acts, not upon the time at which the consequences of the acts became most painful."). Discrete "acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." AMTRAK v. Morgan, 536 U.S. 101, 122 (2002). Rather, '[t]he doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002). In order to establish that the continuing violation theory applies, a plaintiff must allege either a serial violation or a systemic violation. Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 822 (9th Cir. 2001). In other words, plaintiff must allege either (1) "a series of related acts against [him], of which at least one falls within the relevant period of limitations," or (2) a systematic policy or practice . . . that operated, in part, within the limitations period." Id.

- Claim Two insofar as it is predicated on the November 8, 2017 abatement hearing and preceding events, but not otherwise;

- Claim Four insofar as it is predicated on the November 8, 2017 abatement hearing and preceding events, but not otherwise.

The only claims against defendant Frank, who presided over the abatement hearing, are those here identified as time-barred. Defendants argue that the procedural due process claims against Profant, Solomon, and Wegner also relate solely to the abatement hearing and preceding events, and thus are also time-barred. ECF No. 11-1 at 7. However, plaintiff also incorporates allegations that in February of 2018, within the limitations period, Profant, Solomon and Wegner contacted a private collection company and "arbitrarily" stated that plaintiff owed a debt. ECF No. 1 at 10. The undersigned finds below that this allegation fails to support a claim under the due process or equal protection clauses. However, a claim that defendants' February 2018 debt-collection efforts violated plaintiff's rights would not be barred by the statute of limitations.

      F.   Sufficiency of the Allegations to State Claims for Relief, Rule 12(b)(6)

         1.   Claims One and Two: Due Process

To state any due process claim, plaintiff's allegations must demonstrate that "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest." Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008). The substantive due process doctrine "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)). To state a claim for violation of procedural due process, plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003). The protections that are constitutionally required depend on the nature of the proceeding, but at a minimum include notice, and opportunity to be heard, and a neutral decision-maker. See Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976).

////

Regarding the timely procedural due process claim (Claim One, Subclaim Two, based on the Supervisors' assessment of abatement costs), the complaint states that plaintiff received notice of the Board of Supervisors public meeting and that he attended the meeting and presented his defense. ECF No. 1 at 8. Though plaintiff maintains in conclusory fashion that this was a "sham proceeding," id. at 8-9, and notes that his time to speak was limited, he does not state any facts that would support a constitutional requirement of additional procedural protections. See Mathews, 424 U.S. at 333-35. Nor do the allegations demonstrate that plaintiff's opportunity to be heard was inadequate in scope or substance. For example, plaintiff alleges that Zender's estimate of abatement costs was false, but does not allege that he was deprived of an opportunity to contest the estimate. And the allegation that the Supervisors based their assessment on Zender's estimate contradicts the allegation that it was arbitrary. Finally, plaintiff does not provide facts demonstrating that the decisionmaker was biased. See Clements v. Airport Auth. of Washoe County., 69 F.3d 321, 333 (9th Cir. 1995). To the extent that the facts alleged to show retaliation are also relevant to the Supervisors' neutrality, plaintiff's allegations are entirely conclusory. For all these reasons, the claim fails.

Even if the procedural due process claim based on the 2017 abatement proceeding were not time-barred,[8] it would fail to state a claim for relief. Notice and an opportunity to be heard were provided. The heart of plaintiff's grievance is that the hearing officer did not agree with plaintiff's position and found against him, but this does not implicate procedural due process. Plaintiff's allegations of bias are wholly conclusory. And the allegation that Profant, Solomon and Wegner thereafter referred the unpaid penalty to a debt collector do not demonstrate any additional infringement of plaintiff's property interests, even if they were motivated by improper considerations.

The substantive due process claim fails as a matter of law. To the extent that plaintiff challenges the County's cannabis cultivation restrictions and nuisance abatement regime overall,

---

[8] Plaintiff states that he can amend the complaint to clarify that the fine was imposed on him on December 13, 2017, within the statute of limitations period. ECF No. 12 at 3. This matter is addressed below regarding the propriety of amendment.

governmental action need only have a rational basis to be upheld against a substantive due process attack.  United States v. Alexander, 48 F.3d 1477, 1491 (9th Cir. 1995).[9]  To the extent that plaintiff contends he was targeted and/or treated unfairly, he also cannot state a claim.  Even if County officials unfairly or illegally imposed civil penalties and unwarranted costs for violation of the ordinance, that conduct falls far short of the "shocks the conscience" standard.  See County of Sacramento v. Lewis, 523 U.S. 833 (1998) (causing death of motorcyclist by pursuing high-risk chase fails to "shock the conscience" as required for substantive due process violation).

2.  Claim Three: Unreasonable Seizure

"[T]he police may 'seize' citizens for brief, investigatory stops."  Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir. 1993).  An investigatory stop, unlike a full-scale arrest, need only be supported by "reasonable suspicion," id., which is defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013) (citation omitted).  The totality of the circumstances are relevant to determining if and when an investigatory stop becomes an arrest, including: (1) the intrusiveness of the stop, such as the aggressiveness of the police methods, how much plaintiff's liberty was restricted, and the length of the stop; and (2) whether the methods used were reasonable under the circumstances.  Rodriguez v. United States, 575 U.S. 348, 349 (2015); Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996).

According to the complaint before the court, Harris suspected that plaintiff was driving on a suspended license because plaintiff had a "known DUI;" no facts indicate that this suspicion was false or unreasonable.  See ECF No. 1 at 9.  The stop as alleged was accordingly an investigatory stop, not an arrest, as plaintiff was only detained for the time necessary for Harris to issue a citation.  Id.  The methods used were reasonable under the circumstances and not

---

[9]  "If a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process."  Id.  See also Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (to establish a violation of substantive due process, "a plaintiff is ordinarily required to prove that a challenged government action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'") (quoting Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)), cert. denied, 117 S. Ct. 1845 (1997).  The ordinance at issue here is quite plainly related to legitimate government interests.

18

intrusive, given that the stop was brief, and no physical force was used.  Id.  These factors indicate that Harris did not "seize" plaintiff in a constitutionally impermissible way.  See United States v. Luckett, 484 F.2d 89, 90-91 (9th Cir. 1973).  Because plaintiff's Fourth Amendment claim against Harris fails, his claim against Blair for ordering and/or ratifying Harris's actions necessarily fails as well.

### 3.   Claim Four:  Equal Protection

The Equal Protection Clause requires the State to treat all similarly situated people equally.  See Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim under 42 U.S.C. § 1983 for a violation of equal protection, a plaintiff generally must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.  See Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). The complaint in this case is devoid of allegations that plaintiff is a member of a protected class.

The complaint does allege that defendants "singled [plaintiff] out" and treated him "in a vindictive fashion with malicious intent to injury" and "in a manner different that other similarly situated people and without a legitimate or rational basis."  ECF No. 1 at 17, ¶ 92.  The United States Supreme Court has recognized so-called "class of one" claims, in which the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  However, plaintiff's allegations in support of such liability are wholly conclusory and therefore inadequate to state a claim.

"Similarly situated" persons are those "who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'"  Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008).  Accordingly, to state a claim plaintiff must allege concrete facts showing that other Placer County landowners who cultivated or permitted the cultivation of a similar number of non-medical marijuana plants, during the time that the ordinance was in force,

1 were not subject to nuisance abatement proceedings and were not similarly fined for non-
2 compliance. Absent such facts, there is no showing of unequal treatment.[10]

3     4. <u>Claim Five: Retaliation</u>

4     To state a First Amendment retaliation claim, "[a] plaintiff must show that (1) he was
5 engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person
6 of ordinary firmness from continuing to engage in the protected activity and (3) the protected
7 activity was a substantial or motivating factor in the defendant's conduct." <u>O'Brien v. Welty</u>, 818
8 F.3d 920, 932 (9th Cir. 2016) (quoting <u>Pinard v. Clatskanie Sch. Dist. 6J</u>, 467 F.3d 755 (9th Cir.
9 2006)).

10     Plaintiff does not allege facts demonstrating that any defendants were motivated by
11 plaintiff's protected conduct. The fact that plaintiff criticized County officials by e-mail in
12 November 2016, ECF No. 1 at 4, is not sufficient to support an inference that any defendants
13 were targeting him in the fall of 2017 or the summer of 2018. Plaintiff's conclusory assertions of
14 retaliation are insufficient to state a claim. His allegation that Profant, Zender and Solomon
15 ordered Officers Harris and Blair to harass plaintiff, ECF No. 1 at 10, is entirely speculative.
16 Accordingly, this claim is inadequate as to all defendants.

17     5. <u>Claim Six: California Bane Act</u>

18     Defendants make no argument about the facial sufficiency of Claim Six. <u>See</u> ECF No. 11-
19 1 at 8-9. Accordingly, they have not met their burden as the moving party to demonstrate that
20 dismissal is appropriate.

21     The court notes that all of plaintiff's federal claims are subject to dismissal for the reasons
22 already stated. Absent a viable federal claim, this court should decline to exercise supplemental
23 jurisdiction over the state law claim. <u>See</u> 28 U.S.C. § 1367(c)(3). However, because the
24 undersigned is recommending leave to amend several of the federal claims, it is not appropriate

---

25 [10] It is not enough for plaintiff to allege that the County "does not routinely impose
26 punitive sanctions upon similarly situated persons as a result of nuisance abatement proceedings."
ECF No. 1 at 7, ¶ 36. This merely casts a legal conclusion in the form of a factual allegation. <u>See</u>
27 <u>Sprewell</u>, 266 F.3d at 988. Plaintiff must present specific factual matter about the persons he
alleges to be similarly situated in order for the court to determine whether he has stated a
28 plausible claim.

for supplemental jurisdiction to be declined at this time.  If plaintiff chooses to amend his complaint and again fails to state a viable federal claim, the complaint should be dismissed as a whole, including this claim.

G. <u>Leave to Amend</u>

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." <u>Akhtar v. Mesa</u>, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted).  For the reasons now explained, the undersigned finds that leave to amend should be granted as to some claims and defendants but not as to others.

Because all claims against Placer County are barred by res judicata, they must be dismissed with prejudice.  Moreover, any putative claims against any defendants in their official capacities are also barred by the judgment in <u>Lull I</u>.  Amendment cannot overcome the effect of res judicata, which deprives this court of jurisdiction.  Leave to amend should therefore not be granted as to these defendants.  The County must be dismissed, and the complaint should be construed as stating claims against the individual defendants in their individual capacities only.

Subclaim One of Claim One (procedural due process), and those portions of Claims Two and Four that are based on the November 2017 abatement hearing, are barred by the statute of limitations.  Plaintiff states in opposition to dismissal that he can amend the complaint to clarify that "the actual day of imposition [of the abatement fine] was December 13, 2017. . ." ECF No. 12 at 3.  It is unclear to the court what plaintiff means here by "imposition" of the fine, or precisely what official action took place on December 13, 2017.  The complaint itself first indicates that the abatement hearing took place on November 8, 2017, ECF No. 1 at 6, ¶ 28, and then alleges:

> At the conclusion of the multi day Abatement Hearing, Defendant FRANK issued the requested order to abate a nuisance and in addition, imposed upon LULL a [sic] ultra vires ThirtyTwo Thousand Dollar ($32,000.00) punitive sanction.

<u>Id.</u> at ¶ 31.

////

21

On review of the complaint in light of plaintiff's proffer of amendment, the court cannot discern when the abatement hearing began and when it concluded, whether any decision was announced at the conclusion of the hearing, whether and when post-hearing orders were issued, or the substance of such orders. Without this information, the court cannot determine whether plaintiff is entitled to the benefit of a claim accrual date later than November 8, 2017. In light of plaintiff's representation that he can establish a later accrual date, the undersigned will recommend leave to amend the complaint to present more detailed factual allegations regarding the date(s) of the abatement hearing and all related official actions, including the dates of all oral and written decisions or orders. The undersigned makes no finding that "imposition" of the fine within the limitations period would render any of plaintiff's abatement hearing claims timely; such determination simply cannot be made on the present record.

Plaintiff should be permitted to amend his procedural due process, equal protection, and retaliation claims. As explained above, each of these claims fails scrutiny under Rule 12(b)(6) because the complaint lacks factual allegations to support essential elements of liability. It is not "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar, 698 F.3d at 1212. The substantive due process claim, however, fails as a matter of law for the reasons previously explained. It should be dismissed with prejudice.

Defendants' Rule 12(b)(6) challenge to the Fourth Amendment claim focuses on the absence of any allegation that plaintiff's driver's license was not actually suspended. ECF No. 11-1 at 9. While the court has found that a reasonable suspicion of driving on a suspended license defeats the claim, it cannot say that amendment would be futile.

H. Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that your complaint be dismissed with leave to amend most claims against most defendants. Your claims against Placer County, and against any defendants in their official capacities, are barred because you brought or could have brought those claims in your previous lawsuit. Those claims cannot be reasserted in an Amended Complaint. Your substantive due process claim should also be dismissed with prejudice, because your dispute with defendants does not rise to the level of a substantive due process violation. The magistrate judge

is recommending that you be permitted to amend your claims against the individual defendants involving procedural due process, equal protection, unreasonable seizure, and retaliation. If you are granted leave to amend by the district judge, you should also clarify the date(s) of the abatement hearing and the imposition of fine, specifying exactly what official acts happened on what dates. Without that information the court cannot tell whether your claims involving the abatement hearing and the $32,000.00 fine are timely after all. On the face of the current complaint, those claims or subclaims are barred by the statute of limitations.

You may file an amended complaint within 21 days after the district judge in this case makes a final ruling on this recommendation. If you submit an amended complaint before that time, it will be stricken as premature.

### III. CONCLUSION

Accordingly, the undersigned HEREBY RECOMMENDS that the motion to dismiss, ECF No. 11, be GRANTED as follows:

1. That all claims against Placer County be dismissed with prejudice, and that the County be terminated as a defendant;

2. That all claims against the individual defendants be construed as individual capacity claims only, and that any putative official capacity claims be dismissed with prejudice;

3. That Claim Two (substantive de process) be dismissed with prejudice;

4. That Claims One, Three, Four and Five be dismissed with leave to amend;

5. That leave to amend include the procedural history of the subject abatement proceedings, and that plaintiff be directed to set forth the precise dates of the nuisance abatement hearing, the order of abatement, the "imposition of fine," and any related official acts which are asserted as bases for liability; and

6. That plaintiff be directed to file an Amended Complaint within 21 days of a final order on these recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: April 10, 2020

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE