UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER M. LULL,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF PLACER, et al.,<br><br>Defendants. | No.  2:19-cv-2444 KJM AC PS<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21).  All defendants except Ryan Zender, who has not appeared, move for dismissal of plaintiff's First Amended Complaint (ECF No. 21).  ECF No. 23; see also ECF No. 27.  Plaintiff has opposed the motion.  ECF No. 26.  For the reasons that follow, the undersigned recommends that the motion to dismiss be granted as to all claims, and that no further leave to amend be granted.

**I. BACKGROUND**

A. Procedural History

Plaintiff commenced this action on December 6, 2019.  ECF No. 1 at 1.[1]  All named defendants except Ryan Zender have appeared.  It does not appear that Zender has been served.

---

[1]  A previous lawsuit arising from the subject abatement proceedings, Case No. 2:17-cv-2216 KJM EFB (Lull I), was discussed in relation to an earlier motion to dismiss this case, which asserted res judicata among other grounds for dismissal.  See ECF No. 15 (Findings and Recommendations) at 3-4, 8-13.

1

On February 11, 2020, defendants moved to dismiss. ECF No. 9. The motion was granted, with limited leave to amend, as follows:

> a. All claims against Placer County are dismissed with prejudice, and the County is terminated as a defendant;
>
> b. All claims against the individual defendants are construed as individual capacity claims only, and any punitive official capacity claims are dismissed with prejudice;
>
> c. Claim Two (substantive due process) is dismissed with prejudice;
>
> d. Claims One, Three, Four and Five are dismissed with leave to amend;
>
> e. Any amendment as allowed by this order should include the procedural history of the subject abatement proceedings; and identification of the precise dates of the nuisance abatement hearing, the order of abatement, the "imposition of fine," and any related official acts asserted as bases for liability

ECF No. 18 at 2.

Plaintiff filed the operative First Amended Complaint on December 15, 2020. ECF No. 21. It sets forth the following claims for relief under 42 U.S.C. § 1983: (1) violation of plaintiff's right to procedural due process, against Duran, Frank, Holmes, Montgomery, Profant, Solomon, Uhler, Weygandt, and Zender;[2] (2) violation of plaintiff's right to substantive due process, against Duran, Frank, Holmes, Montgomery, Profant, Solomon, Uhler, Weygandt, and Zender; (3) denial of equal protection, against Duran, Frank, Holmes, Montgomery, Profant, Solomon, Uhler, Wegner, Weygandt, and Zender; (4) unreasonable seizure in violation of the Fourth Amendment, against Harris and Blair; (5) violation of plaintiff's First Amendment right to free speech, against all defendants; and (6) violation of California's Bane Civil Rights Act by Harris's use of "threats, intimidation, coercion and actual violence" against plaintiff.

B. <u>Allegations of the First Amended Complaint</u>

Plaintiff Christopher Lull owns 6.4 acres of property ("the Property") in Placer County, some of which he leased to third parties for agriculture (cannabis). ECF No. 21 at 2-4. He brings

---

[2] Plaintiff subdivides Claim One into two distinct subclaims: one regarding the November 2017 abatement hearing and imposition of the $32,000 fine, and another regarding the assessment of costs at the July 2018 Board of Supervisors meeting. ECF No. 21 at 10.

suit against Placer County and numerous county officials regarding 2017 nuisance abatement proceedings and related matters.

In 2010, Lull criticized Wegner's job performance, a criticism he repeated in November 2016 when he sent an e-mail also criticizing Placer County and the supervisors for enforcement measures adopted by the county. Id. at 4. On October 19, 2017, Solomon and another individual requested permission from Lull to inspect the Property, which Lull refused. Id. The next day, Solomon posted a notice on the entry gate of the property demanding access to search for evidence. Id. Lull filed a federal lawsuit concerning the events of October 19 and 20 ("Lull I") and served that complaint on Solomon and Wegner. Id. Upon receiving the summons, Wegner became visibly angry and on October 27th, Solomon searched the Property pursuant to a warrant and posted a notice of abatement hearing on the Property. Id. at 5.

On November 8, 2017, before hearing officer Frank, Profant and Soloman presented the County's case for the requested abatement order and administrative fine. ECF No. 21 at 6. Frank noted that it was their first hearing and the procedures used were informal. Id. The hearing lasted several days and on December 13, 2017, Frank issued an order of abatement of the nuisance and a $32,000 fine. Id. At the hearing, Lull saw Wegner speak to several unnamed Sheriff's officers and gesture to Lull. Id.

In February of 2018, defendants Profant, Zender, Soloman and Wegner contacted a private collection company to report Lull's debt. ECF No 21. at 9.

In June of 2018, Holmes, Uhler, Montgomery, Weygandt and Duran held a Placer County Board of Supervisors meeting at which Zender presented the County's estimated abatement costs. The Supervisors imposed a $7,124 Special Assessment fine on Lull for the costs of the 2017 nuisance abatement hearing. Id. at 7.

After the Board of Supervisors meeting concluded, Officer Harris warned Lull against driving his car, saying that Lull did not have a valid driver's license and asking Lull to sign a citation for driving on a suspended license. Id. at 8. Lull asked if he was being detained, and Harris said "yes, you are detained." Id. Though Lull tried to show Harris his Puerto Rican driver's license, Harris would not look at it and stated it was suspended due to a "known DUI."

1   Id.  After Lull signed the citation, he was released.  Id.  Harris's immediate supervisor Blair
2   witnessed the interaction and condoned Harris's action.  Id.  Lull alleges that other Placer County
3   Sheriff's officers were present, and Blair commented, "we all know who you are Chris."  Id. at 8-
4   9.  Lull alleges that Solomon, Wegner, and Zender ordered the deputies to investigate, harass,
5   vex, and surveil Lull.  Id. at 9.

## II.  MOTION TO DISMISS

All served defendants now move to dismiss pursuant to FRCP 12(b)(6) and to strike pursuant to FRCP 12(f).  ECF No. 23.  Plaintiff opposes the motion.  ECF No. 26.  Defendants argue that plaintiff's first, third, fifth and sixth claims are barred by statute of limitations; that all of plaintiff's claims fail to allege facts sufficient to state a claim for relief; and that plaintiff's second claim must be struck since the claim was dismissed in this court's previous order.  ECF No. 18 at 2.

## III.  ANALYSIS

A. Legal Standards

1. Motion to Dismiss

"The purpose of a motion to dismiss under rule 12(b)(6) is to test the legal sufficiency of the complaint."  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983) (citation omitted).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), as amended, 275 F.3d 1187 (9th Cir. 2001). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). "Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citation and internal quotation marks omitted). The court's liberal interpretation of a pro se complaint, however, may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), *superseded on other grounds by statute as stated in* Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc).

    2.  Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to

trial." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are disfavored, and should only be granted where the matter to be stricken clearly has no bearing on the litigation. Neveau v. City of Fresno, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (quoting Colaprico v. Sun Microsystems, Inc., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

### B. Claim Two Has Previously Been Dismissed With Prejudice and Should Be Stricken

Plaintiff's substantive due process claim has already been dismissed with prejudice. ECF No. 18 at 2. Its reassertion in the First Amended Complaint thus violates the court's prior order and has no legal effect. Because Claim Two has already been adjudicated, it can have no bearing on the litigation and may appropriately be stricken under Rule 12(f).

### C. Statute of Limitations

Actions brought under § 1983 are governed by the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). In California, a two-year statute of limitations applies. See Cal. Civ. Proc. Code § 335.1; Jones, 393 F.3d at 927. The limitations period runs from accrual of the claim(s), which occurs when the plaintiff has a complete and present cause of action. Wallace v. Kato, 549 U.S. 384, 388 (2007) (accrual occurs when "the plaintiff can file suit and obtain relief.") (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)); Flynt v. Shimazu, 940 F.3d 457, 462 (9th Cir. 2019). Under this general rule, the limitations period begins to run "when the cause of action is complete with all of its elements." Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999) (citing Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal. 3d 176, 187 (1971) ("[i]n ordinary tort and contract actions, the statute of limitations… begins to run upon the occurrence of the last element essential to the cause of action")).

This case was commenced by filing of the original complaint on December 6, 2019. ECF No. 1 at 1. Any cause of action accruing between December 6, 2017 and December 6, 2019 is therefore timely.

#### 1. Claim One: Procedural Due Process

Subclaim One is based on the 2017 abatement proceedings. ECF No. 21 at 10, ¶ 66. The hearing before defendant Frank began on November 8, 2017, a date outside the limitations period.

1  Accepting the truth of plaintiff's allegations and drawing all reasonable inferences in his favor, as
2  the court must do at this stage, the proceedings continued for several days and the order of
3  abatement and assessment of fine ultimately issued on December 13, 2017, within the limitations
4  period. Plaintiff could not have brought suit regarding the abatement proceedings, including on
5  the basis of procedural irregularities on November 8, 2017, before Frank's final decision on the
6  matter caused the alleged deprivation of his property interests. Had no formal order issued and no
7  fines been assessed, even egregious procedural defects at the November hearing would not have
8  given rise to any cause of action because there would have been no resulting deprivation.
9  Accordingly, the last element of plaintiff's procedural due process claim occurred on December
10 13, 2017, and Subclaim One is timely.[3]

11 Subclaim Two is based on the June 2018 Board of Supervisors meeting at which plaintiff
12 was assessed costs related to the prior abatement proceedings. ECF No. 21 at 10, ¶ 67. This
13 hearing took place within the limitations period, and any claims arising from it are therefore
14 timely.

      2.  Claim Three: Equal Protection

16 Claim Three challenges both the penalty imposed in relation to the abatement hearing and
17 the subsequent imposition of assessed costs. Because the FAC alleges that the formal abatement
18 order and fines issued on December 13, 2017, that is when the claim accrued. Even if plaintiff
19 had experienced discrimination prior to and at the November hearing, the proceedings were not
20 final until the order issued. Plaintiff could not have sued on the theory that he was treated
21 differently than similarly situated persons until the outcome of the abatement proceeding
22 demonstrated adverse treatment and the injury was complete. Claim Three is timely.

23 Plaintiff's challenge to the events of June 10, 2018, also accrued within the limitations
24 period and therefore is timely.

25 ////

---

[3] Plaintiff cites Cal. Civ. Proc. Code §1013 for the proposition that the order was not valid until five days after it was mailed, making the date of his injury December 19, 2019. Id. The court need not consider this argument because the date of the order's alleged issuance brings the abatement hearing claims within the statute of limitations.

### 3. Claim Four: Unreasonable Seizure

Claim Four alleges that Harris' inquiries regarding plaintiff's driver's license constituted an unreasonable seizure. ECF No. 21 at 13-14. The events underlying this claim occurred on the same day as the Placer County Board of Supervisors public meeting on June 10, 2018. The claim is therefore timely.

### 4. Claim Five: Retaliation

This claim encompasses all of the events described in the complaint and alleges broadly that all actions taken by all defendants were motivated by hostility toward plaintiff on account of his exercise of his First Amendment right to criticize County government. ECF No. 21 at 15. This court's previous order noted the possibility of Claim Five's timeliness based on a continuing violations theory.[4] In plaintiff's opposition to the instant motion, he alleges that the retaliatory actions taken against him include intimidation during proceedings, imposition of two separate fines, and a temporary detainment. ECF No. 26 at 9. The earliest of these alleged retaliatory actions would have occurred on November 8, 2017, the start of the proceedings. Any conduct that occurred in the proceedings prior to December 6, 2017 falls outside of the statute of limitations and therefore may not support free-standing causes of action. However, the remainder

---

[4] "The continuing violations theory applies to § 1983 actions . . . allowing a plaintiff to seek relief for events outside of the limitations period." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). The doctrine has the "effect of . . . restart[ing] the statute of limitations" when there are "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 597 (9th Cir. 1990); Airweld, Inc. v. Airco, Inc., 742 F.2d 1184, 1189-90 (9th Cir. 1984). However, the Ninth Circuit has "repeatedly held that a mere continuing impact from past violations is not actionable." Knox, 260 F.3d at 1013 (quotations and citations omitted); Abramson v. Univ. of Haw., 594 F.2d 202, 209 (9th Cir.1979) ("The proper focus is upon the time of the ... acts, not upon the time at which the consequences of the acts became most painful."). Discrete "acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." AMTRAK v. Morgan, 536 U.S. 101, 122 (2002). Rather, '[t]he doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002). In order to establish that the continuing violation theory applies, a plaintiff must allege either a serial violation or a systemic violation. Douglas v. Cal. Dep't of Youth Auth., 271 F.3d 812, 822 (9th Cir. 2001). In other words, plaintiff must allege either (1) "a series of related acts against [him], of which at least one falls within the relevant period of limitations," or (2) a systematic policy or practice . . . that operated, in part, within the limitations period." Id.

of plaintiff's allegations including the imposition of two separate fines and the alleged detainment fall within the statute of limitations. Accordingly, the undersigned finds that the allegations demonstrate a series of related acts against plaintiff, three of which fall within the statute of limitations. Accordingly, Claim Five is timely.

### 5. Claim Six: California Bane Act

This claim arises from plaintiff's encounter with Harris on June 10, 2018. Any cause of action arising from that encounter accrued during the limitations period, for the reasons explained above as to Claim Four. Defendants here challenge plaintiff's failure to timely file a written claim with the County as required by California's Government Claims Act, which is a prerequisite to suit. Although defendants characterize this as a statute of limitations issue, ECF No. 23-1 at 6, the court disagrees. The Claims Act issue is considered below regarding the sufficiency of the claims.

### D. Sufficiency of the Allegations to State Claims for Relief, Rule 12(b)(6)

#### 1. Claim One: Procedural Due Process

To proceed on a due process claim, plaintiff's allegations must demonstrate that "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest." Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008). To state a claim for violation of procedural due process, plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003). The protections that are constitutionally required depend on the nature of the proceeding, but at a minimum include notice, an opportunity to be heard, and a neutral decision-maker. See Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976).

Subclaim One challenges the 2017 proceedings before hearing officer Frank, and the ensuing order of abatement and fine. The FAC establishes that plaintiff was in fact provided notice and an opportunity to be heard. The heart of plaintiff's grievance is that the hearing officer did not agree with plaintiff's position and found against him, but this does not amount to a denial of the right to be heard or otherwise implicate procedural due process. Plaintiff's allegations of bias are wholly conclusory; an adverse outcome does not establish or imply bias. The allegation

that Profant, Solomon and Wegner thereafter referred the unpaid penalty to a debt collector does not demonstrate any additional infringement of plaintiff's property interests, even if defendants were motivated by improper considerations. For these reasons, Subclaim One does not state a claim for violation of plaintiff's right to due process.

Subclaim Two is based on the 2018 assessment of abatement costs at a public meeting of the Board of Supervisors. The FAC does not indicate how plaintiff became aware of the hearing, but the opposition states that plaintiff attended the meeting because the matter of the assessment of costs was published as part of a public agenda. ECF No. 26 at 5-6. Although plaintiff maintains that a publicly posted agenda item is insufficient to provide the constitutionally-required notice, he plainly had actual advance notice. Plaintiff does not allege any facts that would require additional procedural protections. See Mathews, 424 U.S. at 333-35. The FAC includes no facts indicating that notice or opportunity to be heard were inadequate in the constitutional sense, and plaintiff did in fact receive notice of the meeting and was in attendance.

Nor do the allegations demonstrate that plaintiff's opportunity to be heard was inadequate in scope or substance. For example, plaintiff alleges that Zender's estimate of abatement costs was false but he does not allege that he was deprived of an opportunity to contest the estimate. ECF No. 21 at 11. Plaintiff argues that the special assessment is arbitrary in that it imposed a fee for a physical abatement that was never performed. Id. at 7. However, the FAC acknowledges that Zender explained the fee was for time spent preparing for the abatement hearing, not for the costs of a physical abatement, id.; this allegations undercuts plaintiff's argument of arbitrariness. Finally, plaintiff does not any provide facts demonstrating that the decisionmaker was biased. See Clements v. Airport Auth. of Washoe County., 69 F.3d 321, 333 (9th Cir. 1995).

In sum, the amendments in the FAC do not provide facts that cure the conclusory nature of plaintiff's procedural due process claims. Claim One should therefore be dismissed for failure to state a claim upon which relief may be granted.

2. Claim Three: Equal Protection

The Equal Protection Clause requires the State to treat all similarly situated people equally. See Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim under 42

U.S.C. § 1983 for a violation of equal protection, a plaintiff generally must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. See Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013). Alternatively, a plaintiff may pursue relief as a "class of one" if the allegations demonstrate that he was singled out by local officials for treatment different from that of similarly situated individuals without a rational basis. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

The amended complaint includes no new facts demonstrating that plaintiff is a member of a protected class, or that he was treated differently than other similarly situated persons without rational basis. Plaintiff's opposition incorrectly focuses on the difference in treatment for various types of nuisance cases, alleging that the remedy should be the same for vehicles parked on a lawn as for marijuana plants. ECF No. 26 at 8. The relevant inquiry is not whether different forms of nuisance are treated differently, but whether plaintiff was treated differently than other property owners with similar potential marijuana violations. Plaintiff was so informed when the court ruled on the earlier motion to dismiss. ECF No. 15 at 19-20.

"Similarly situated" persons are those "who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). The rationale is that "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602 (2008). Accordingly, to state a claim plaintiff must allege concrete facts showing that other Placer County landowners who cultivated or permitted the cultivation of a similar number of non-medical marijuana plants, during the time that the ordinance was in force, were not subject to nuisance abatement proceedings and were not similarly fined for non-compliance. Plaintiff pleads only that officials "would not have taken" the action of imposing fines upon other similarly situated people. ECF No. 21 at 12. However, plaintiff does not plead any facts to show that he was *in fact* treated differently than other, similarly situated, Placer County landowners. This is fatal to the claim, which therefore should be dismissed under Rule 12(b)(6).

### 3. Claim Four: Unreasonable Seizure

"[T]he police may 'seize' citizens for brief, investigatory stops." Morgan v. Woessner, 997 F.2d 1244, 1252 (9th Cir. 1993). An investigatory stop, unlike a full-scale arrest, need only be supported by "reasonable suspicion," id., which is defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013) (citation omitted). The totality of the circumstances is relevant to determining if and when an investigatory stop becomes an arrest, including: (1) the intrusiveness of the stop, such as the aggressiveness of the police methods, how much plaintiff's liberty was restricted, and the length of the stop; and (2) whether the methods used were reasonable under the circumstances. Rodriguez v. United States, 575 U.S. 348, 349 (2015); Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996).

The FAC alleges that Harris suspected plaintiff was driving on a suspended license because plaintiff had a "known DUI;" no alleged facts indicate that this suspicion was unreasonable. See ECF No. 21 at 8. The stop as alleged by plaintiff was accordingly an investigatory stop, not an arrest, as plaintiff was only detained for the time necessary for Harris to issue a citation. Id. Although plaintiff alleges that he did not feel free to leave, and felt he would be subdued if he left, the methods used were objectively reasonable under the circumstances and not intrusive—the stop was brief, and no physical force was used. Id. Plaintiff's assertion of fear and intimidation is also undercut by his allegation that following his conversation with Harris, plaintiff walked over to speak with Blair nearby before leaving the scene. Id. at 9. These circumstances indicate that Harris did not "seize" plaintiff in a constitutionally impermissible way. See United States v. Luckett, 484 F.2d 89, 90-91 (9th Cir. 1973).

The alleged invalidity of the citation signed by plaintiff does not change the facts surrounding the alleged seizure. Plaintiff does not allege that the interaction was lengthy, or that any physical force or threat of physical force was used. After being given leave to amend, plaintiff has failed to plead any additional facts that would alter the court's previous findings. Accordingly, plaintiff's Fourth Amendment claim against Harris, and therefore also against Blair, fails.

    4.  Claim Five: Retaliation

To state a First Amendment retaliation claim, "[a] plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016) (quoting Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755 (9th Cir. 2006)). A plaintiff may establish retaliatory motive using direct or circumstantial evidence. Ulrich v. City & County of San Francisco, 308 F.3d 968, 979 (9th Cir. 2002) (citing Allen v. Iranon, 283 F.3d 1070, 1074 (9th Cir. 2002)).

Claim Five of the FAC is largely identical to its counterpart in the first complaint, which was found to be entirely conclusory in its allegation of retaliatory intent. See ECF No. 15 at 20. In opposition to dismissal, plaintiff argues in essence that the allegations regarding his several types of protected activity (criticizing the government, participating in public meetings, and suing the defendants in federal court) and the numerous adverse actions taken against him by defendants, when considered collectively, support an inference of retaliatory intent on the theory that defendants "have a strong aversion to plaintiff" and wanted to "teach him a lesson." See ECF No. 26 at 9-10. The court disagrees.

The only factual allegation that arguably reflects interpersonal animus of any kind is the allegation that on one occasion outside the limitations period Wegner "became visibly angry" and "berated" plaintiff. ECF No. 21 at 5, ¶ 26. All the other allegations that plaintiff cites to demonstrate retaliatory animus involve the actions underlying his due process, equal protection and Fourth Amendment claims, ECF No. 26 at 9-10, all of which have been found insufficient to state claims for relief. Although adverse actions need not independently violate the Constitution to support a retaliation claim, see Pratt v. Rowland, 65 F.3d 802, 806 (1995), the irregularities alleged here simply do not imply retaliatory intent. Plaintiff insists he was treated differently than anyone else ever has been, which he argues demonstrates the existence of a vendetta against him, but he provides no facts demonstrating that his situation was not itself unique. The facts that have

////

been alleged do not demonstrate that plaintiff's treatment by defendants was unreasonable or intended to punish him.

Although the court must at this stage construe the complaint in plaintiff's favor, it need not accept as true conclusory or speculative allegations. Western Mining Council, 643 F.2d at 624. Nor must it draw inferences that are not reasonable. See Iqbal, 556 U.S. at 678. Plaintiff's allegations regarding the nuisance abatement proceeding and its aftermath do not support a conclusion that defendants were acting so outside established procedures as to generate an inference of retaliatory animus. Although the FAC amply establishes mutual antagonism between plaintiff and at least some County personnel, the allegations do not support a reasonable inference that defendants' "strong [personal] aversion to plaintiff" was substantially based on hostility to his exercise of First Amendment rights. Accordingly, Claim Five should be dismissed.

### 5. Claim Six: California Bane Act

The Bane Act punishes any "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal Civ. Code § 52.1(a). Pursuant to the Government Claims Act, California Government Code § 911.2, individuals are required to file a written claim with the County within one year of the accrual of their cause of action as a condition precedent to filing any civil action for damages under the Bane Act. Inman v. Anderson, 294 F. Supp. 3d 907, 925 (N.D. Cal. 2018).

Defendants seeks dismissal of Claim Six for failure to comply with the Government Claims Act. The FAC does not allege that plaintiff presented a written claim for damages to the County, and plaintiff admits in response to the motion that he did not do so. ECF No. 26 at 10. Accordingly, Claim Six is barred and should be dismissed.

## E. Further Leave to Amend Should Not Be Granted

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar

v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). Amendment may be denied as futile where the underlying facts or circumstances of which plaintiff complains are not a proper subject of relief, or where amendment previously allowed has failed to cure identified pleading deficiencies. Foman v. Davis, 371 U.S. 178, 182 (1962).

Plaintiff has previously been given the opportunity to amend the complaint after his claims were found inadequate under Rule 12(b)(6) on a previous motion to dismiss. Although the amendments are sufficient to demonstrate the timeliness of his claims, they fail to cure or even improve upon the substantive pleading deficiencies of plaintiff's claims. Claim Two has already been dismissed with prejudice. Claim Six is not amenable to amendment because plaintiff acknowledges non-compliance with the Government Claims Act, and the time for compliance has long since passed. Plaintiff was previously informed of the specific factual deficiencies in his procedural due process, equal protection, Fourth Amendment, and retaliation claims, and was informed of the elements of those claims. See ECF NO. 15 at 16-20. His failure to provide additional facts sufficient to state a claim indicates that there are no additional facts. The FAC presents a comprehensive factual statement of plaintiff's grievances, but the facts and circumstances presented do not support any claim of constitutional violation. Accordingly, further amendment would be futile.

F.   Plain Language Summary of this Order for a Pro Se Litigant

It is being recommended that your complaint be dismissed without further leave to amend. You may not pursue a claim under the Bane Act because you never filed a claim with the County. Your substantive due process claim was previously dismissed without leave to amend, and you did not have permission to include it in your First Amended Complaint. Your factual allegations clearly show what happened and why you think that the abatement proceedings, fines, and costs imposed on you were unfair, but not that your constitutional rights were violated. Because you have already been informed of the problems with your claims and have had the opportunity to amend them, further amendment would be futile. Therefore it is recommended that the case be dismissed.

////

### IV.  CONCLUSION

Accordingly, the undersigned HEREBY RECOMMENDS that the motion to dismiss, ECF No. 23, be GRANTED and that the action be DISMISSED WITH PREJUDICE.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 24, 2021

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE